FILED

MAR 0 9 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO: 5:23 CR 146 |
| v. | ) | Title 18, United States Code, |
| | ) | Sections 371 and 1349 |
| ROMEO V. TRAVIS, | ) | |
| | ) | JUDGE BOYKO |
| Defendant. | ) | MAG JUDGE KNAPP |

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise indicated:

1.      Defendant ROMEO V. TRAVIS was a professional basketball player employed
by foreign-based teams, including in Croatia, France, Italy, Ukraine, Russia, and the Philippines.
When Defendant was not playing basketball professionally, he resided in Akron, in the Northern
District of Ohio, Eastern Division.

2.      Person 1, a professional sports agent and attorney, represented Defendant in
employment matters.

3.      Person 2 was a tax preparer.

4.      Person 3 was the mother of one of Defendant's children.

5.      Defendant controlled a bank account at JP Morgan Chase, ending in 7176.

6.      Defendant entered into written contracts with most of the teams that employed
him, which stipulated Defendant's salaries.

7.     Defendant was required each year to file United States Individual Income Tax Returns ("tax returns") with the Internal Revenue Service ("IRS"), to therein report his income, and to pay any taxes owed.

8.     In or around 2013, Defendant's 2009 income tax return came under audit by the IRS.  Person 1 referred Defendant to Person 2 for the purpose of thereafter preparing Defendant's tax returns, and each year from 2013 on, Person 2 prepared Defendant's tax returns.

9.     Person 2 periodically requested that Defendant provide Person 2 with copies of Defendant's employment contracts so that Person 2 could use the salaries listed in the contracts to determine the amount of income to record on Defendant's tax returns.

10.    The Stark County Child Support Enforcement Agency ("SCCSEA") oversaw child support payments in Stark County, and when individuals were judicially ordered to make payments, the agency disbursed the funds to the beneficiaries.

11.    Defendant owed and paid child support to Person 3 through the SCCSEA.

12.    On or about September 14, 2016, Defendant was sued in a civil complaint brought by Person 3 in the Stark County Court of Common Pleas, Juvenile Division ("the Stark County court"), seeking to increase the amount of child support that Defendant had been paying to Person 3 through the SCCSEA.  An attorney who represented Person 3 in bringing the complaint ("Person 3's attorney") mailed a copy of the motion to Defendant's home address in Akron.

13.    On or about October 7, 2016, Person 3's attorney sent a letter to an attorney representing Defendant ("Defendant's attorney").  Person 3's attorney requested proof of Defendant's income sources, including a copy of Defendant's contract with the Italian team who employed Defendant.  The purpose of this request was for Person 3's attorney to determine Defendant's financial ability to make future support payments to Person 3.

14.     On or about November 4, 2016, Person 3's attorney filed a pleading with the Stark County court requesting that Defendant provide Person 3 with: (i) copies of his federal and state income tax returns for the years 2013 through 2016; (ii) copies of Defendant's employment contracts with basketball teams that employed him from years 2012 through 2016; and (iii) records of any income sources between 2013 and 2016.  The motion stated that if Person 3's attorney did not receive the records by December 6, 2016, Person 3's attorney would request that the Stark County Court order Defendant to provide the records to Person 3's attorney, and to pay any attorney's fees associated with enforcing the order.  Person 3's attorney filed a notice with the Stark County Court stating that the motion had been served on Defendant through Defendant's attorney.

15.     On or about December 2, 2016, Person 3's attorney faxed a letter to Defendant's attorney requesting that Defendant's attorney also provide Person 3's attorney with a signed copy of the employment contract with the Italian team.

COUNT 1
(Conspiracy to Defraud the United States, 18 U.S.C. § 371)

The First Assistant United States Attorney charges:

16.     The factual allegations of paragraphs 1 through 3 and 5 through 9 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

The Conspiracy

17.     From on or about January 1, 2013, to on or about February 11, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ROMEO V. TRAVIS and Person 1 did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue

3

Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of revenue, namely, Defendant's individual income taxes.

Objects of the Conspiracy

20.     The objects of the conspiracy for Defendant and Person 1 were to: (1) prepare tax returns that falsely under-reported Defendant's income; (2) avoid the payment of federal tax on Defendant's income; and (3) evade detection of the conspiracy.

Manner and Means of the Conspiracy

21.     It was part of the conspiracy that:

a.    Person 1, on multiple occasions over the course of several years, provided Defendant with altered copies of Defendant's employment contracts, which Person 1 changed to falsely make it appear that Defendant's salaries were less than they were.  Person 1 also sometimes altered the contracts to correspondingly make it appear that Person 1's commissions were less than they were.

b.    Defendant, with Person 1's knowledge, provided these altered contracts to Person 2, who used them to calculate the income to record on the tax returns that Person 2 prepared for Defendant.  Defendant did not inform Person 2 that the contracts were altered. Defendant did not inform Person 2 about his income from playing for certain other basketball teams.   As the altered contracts understated Defendant's income, and Defendant failed to report his other income to Person 2, the tax returns that Person 2 prepared and provided to Defendant understated Defendant's income.  Defendant was aware that there was a discrepancy between his actual income and the amount reported on this tax returns.

      c.   When Person 2 provided the tax returns to Defendant, Person 2 advised Defendant to file the returns with the IRS, and provided Defendant with instructions for doing so.  Despite Person 2's instructions, Defendant did not file most of the tax returns with the IRS.

      d.   Defendant, however, did sign and file with the IRS the tax return that Person 2 prepared for Defendant for the calendar year 2013.  That tax return stated that Defendant earned $141,088 in 2013, when Defendant actually earned approximately $240,343.  The tax return understated Defendant's income as Defendant provided Person 2 with an altered employment contract for a basketball team that Defendant played for in Croatia in 2013, which falsely listed Defendant's income as $8,000 per month, when in fact, Defendant earned $16,000 per month. Defendant also under-reported his income to Person 2 from his employment with a basketball team in Ukraine that also occurred in 2013.

      e.   Defendant deposited much of his income into bank accounts that he opened and controlled in the Northern District of Ohio, Eastern Division.

      f.   Person 1 and Defendant used email to provide altered contracts to, and procure tax returns with false income information from, Person 2.

<u>Overt Acts</u>

22.     In furtherance of the conspiracy, and to affect the objects thereof, Defendant and Person 1 committed the following acts, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

      a.   On or about April 16, 2015, Defendant emailed Person 2, asking, "Can you do my taxes this year?"  On or about April 17, 2015, Person 2 replied, "Of course," and Defendant asked, "What all do you need again?" to which Person 2 replied, "2013 2014 contracts."

b.  On or about April 20, 2015, at approximately 8:02 p.m., Person 1 forwarded to Defendant an email from a representative of a basketball team that Defendant played for in Russia during the 2014-2015 season.  The email contained a copy of Defendant's contract with the team, which correctly stated that Defendant's monthly salary was $21,000, and that Person 1's agent fee was $10,500.

c.  On or about April 20, 2015, at approximately 8:12 p.m., Person 1 emailed Defendant an altered copy of the contract with the same Russia-based team referenced in the preceding paragraph, falsely stating that Defendant's monthly salary was $11,500, and that Person 1's agent fee was $5,750.

d.  On or about April 27, 2015, Person 1 forwarded an email to Defendant from a representative of a basketball team in Ukraine that Defendant played for during the 2013-2014 season.  The email included an attachment containing Defendant's contract with the team, which correctly stated that Defendant's monthly salary was $22,000, and that Person 1's agent fee was $10,500.

e.  On or about June 14, 2015, at approximately 9:49 p.m., Person 1 emailed Defendant an altered copy of the contract with the same Ukraine-based team referenced in the preceding paragraph, falsely stating that Defendant's monthly salary was $11,500, but correctly stating that Person 1's agent fee was $10,500.

f.  On or about June 14, 2015, at approximately 9:54 p.m., Person 1 emailed Defendant a second altered copy of the contract with the same Ukraine-based team referenced in the preceding paragraph, falsely stating that Defendant's salary was $11,500 per month, and that Person 1's agent fee was $5,750.

g.  On or about June 14, 2015, at approximately 10:38 p.m., Defendant forwarded to Person 2 the email that Person 1 sent Defendant with the second altered copy of the contract with the same Ukraine-based team falsely stating that Defendant's salary was $11,500 per month and that Person 1's agent fee was $5,750.

h.  On or about July 9, 2015, Defendant caused his employer to transfer $35,000 from a bank account in the Philippines, to the JP Morgan Chase Bank account ending in 7176, which was based in Akron, Ohio, with notation, "Ref: Salary for The Period Covered June 13 July 12 (sic) 2015."

i.  On or about October 4, 2015, Defendant emailed Person 2, stating, "I need my taxes filed for last year."  On or about October 6, 2015, Person 2 replied, "Romeo, I'm getting your contract info from [Person 1]. Will be done shortly."  Defendant replied, "Ok thank you."

j.  On or about July 3, 2017, Person 1 forwarded an email from a representative of a France-based team with a proposed contract attached, signed by a team executive, for Defendant to play in the 2017-2018 basketball season.  The message from the team representative to Person 1 read, "See attached signed by the team for your review.  180k€ + 10k€ for playoffs qualification: 190k€ (215.600$). Other bonuses through plan profit sharing. Regards."  Defendant accepted the offer to play for the France-based team.

k.  On or about November 16, 2017, and on or about January 31, 2018, Person 1 emailed Defendant altered copies of his employment contract with the France-based team that Defendant was then playing for in the 2017-2018 season, falsely stating that Defendant's income was $8,000 per month, and that Person 1's commission was $4,000, when Defendant's actual salary with the team was approximately k€ 20,560 (approximately $23,148.25) per month. Defendant then provided this contract with false income information to Person 2 for Person 2 to

7

prepare his tax return.

All in violation of Title 18, United States Code, Section 371.

COUNT 2

(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The First Assistant United States Attorney further charges:

23.    The factual allegations of paragraphs 1 through 15 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

The Conspiracy

24.    From on or about January 1, 2013, to on or about February 13, 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ROMEO V. TRAVIS and Person 1 did knowingly and intentionally combine, conspire, confederate and agree to devise a scheme and artifice to defraud and to obtain money and property from Person 3 and the SCCSEA, by decreasing the amount of child support payments to Person 3 and the SCCSEA, by means of false and fraudulent pretenses, representations and promises; and for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

Objects of the Conspiracy

25.    The objects of the conspiracy were for Defendant and Person 1 to: (1) decrease the amount of child support Defendant paid to Person 3, and to the SCCSEA; and (2) to prevent detection of the conspiracy.

Manner and Means of the Conspiracy

26.    It was part of the conspiracy that:

a.    Defendant and Person 1 employed the conduct described in paragraphs 21(a),

8

(b) and (f), and paragraph 22(a)-(k), of this Information, which is re-alleged and incorporated by reference as if fully set forth herein.

      b.   Defendant and Person 1 used the altered employment contracts that Person 1 provided to Defendant, and the tax returns with false income information that Person 2 created using the altered employment contracts that Defendant provided to Person 2, for the purpose of decreasing Defendant's child support payments to Person 3 and the SCSEA.

      c.   On or about August 17, 2016, Person 1 emailed Defendant, from the State of New Jersey to somewhere in Europe, a copy of his contract with a basketball team in Italy, for whom he was playing during the 2016-2017 season.   The email contained an attachment of Defendant's contract with the team, which correctly stated that Defendant's monthly salary was $19,000, and that Person 1's agent fee was $9,500.

      d.   On or about October 2, 2016, Person 1 emailed Defendant, from the State of New Jersey to somewhere in Europe an altered copy of Defendant's contract with the Italian team referenced in preceding paragraph of this Information, falsely stating that Defendant's monthly salary was $8,000, and falsely stating that Person 1's agent fee was $4,000.

      e.   On or about November 8, 2016, Person 1 sent an email to Person 2 and Defendant, which read:

> "Hey [Person 2], Romeo is going through a child support hearing.  [Person 3] wants him to raise what he is paying.  The opposing lawyer sent him paperwork (attached) and he wants to talk with you asap. I'd say email him so you guys can start the dialogue.  He's copied on the email.  Thanks, [Person 1]".

The attachment to this email contained a copy of the request from Person 3's attorney for records regarding Defendant's income, including copies of Defendant's employment contracts and tax returns.

      f.  On or about November 15, 2016, Defendant emailed Person 2, from somewhere in Europe to the State of New Jersey, and said, "I need my 2015 taxes done ASAP. And any outstanding bill please let me know.  Romeo Travis."  Person 2 replied, "I need your 2014/2015/2016 contracts."

      g.  On or about November 16, 2016, at approximately 7:51 p.m., Person 1 forwarded to Defendant, from the State of New Jersey to somewhere in Europe, the email described in paragraph 22(c) of this Information, which Person 1 previously sent Defendant on April 20, 2015, containing Defendant's altered employment contract with the Russia-based team, falsely listing Defendant's income for the 2014-2015 season as $11,500 per month, and falsely listing Person 1's commission as $5,750.

      h.  On or about November 16, 2016, at approximately 7:51p.m., Person 1 forwarded to Defendant, from the State of New Jersey to somewhere in Europe, the email described in paragraph 22(e) of this Information that he previously sent Defendant on June 14, 2015, containing Defendant's altered employment contract with the Ukraine-based team, falsely listing Defendant's income for the 2013-2014 season as $11,500 per month.

      i.  On or about November 17, 2016, at approximately 9:05 a.m., Defendant emailed Person 2, from the State of New Jersey to somewhere in Europe, the altered employment contract with the Ukraine-based team referenced in the previous paragraph, falsely listing Defendant's income for the 2013-2014 season as $11,500 per month.

j.   On or about November 17, 2016, at approximately 9:05 a.m., Defendant forwarded, from somewhere in Europe to the State of New Jersey, to Person 2 his altered employment contract with the Russia-based team referenced in paragraphs 22(c) and 26(g) of this Information, falsely listing Defendant's income for the 2014-2015 season as $11,500 per month, and Person 2's commission as $5,750.

k.   In or around November 2016, Defendant provided his attorney with an unsigned copy of the altered employment contract for the Italian team who employed Defendant as referenced in paragraph 26(d) of this Information, falsely stating that his monthly salary was $8,000 and that Person 1's agent fee was $4,000.

l.   Defendant caused his attorney to provide the altered contract referenced in the preceding paragraph above to Person 3's attorney at a hearing on December 1, 2016, in the Stark County court.

m.   On or about December 29, 2016, Person 3's attorney brought a motion in the Stark County Court to compel the production of Defendant's tax returns and employment contracts, most of which Defendant and his attorney had not yet produced.

n.   Defendant provided his attorney with his tax returns, which under-reported his income, and his altered contracts with: the Ukraine-based team for the 2013-2014 season described in paragraph 26(h) of this Information; the Russia-based team for the 2014-2015 season described in paragraph 26(g) of this Information; and the Italy-based team for the 2016-2017 season described in paragraph 26(k) of this Information.

o.   On or about January 3, 2017, Defendant caused his attorney to provide the documents referenced in the preceding paragraph to Person 3's attorney. Defendant's attorney filed a pleading with the Stark County Court notifying the court that Defendant had complied

11

with Person 3's request for Defendant to produce his tax returns and employment contracts. The altered contract for the Italian team that Defendant, through his attorney, provided to Person 3's attorney, was not signed.

      p. On or about January 9, 2017, Person 3's attorney faxed a letter to Defendant's attorney re-requesting an executed copy of the contract with the Italian team. Defendant then provided his attorney with another copy of the altered contract, but this time with Defendant's signature, and the purported signature of a representative of the Italian team. Defendant caused his attorney to provide this purportedly accurate, but in-fact fraudulent, executed contract to Person 3's attorney.

      q. The tax return for calendar year 2015, that Defendant provided to his attorney, and that his attorney provided to Person 3's attorney, listed Defendant's income as $85,880, when, in-fact, Defendant earned approximately $278,850 in that year. This tax return, which Person 2 had prepared and provided to Defendant, under-reported Defendant's income because: (1) Person 2 prepared the tax return using the altered contract from the Russia-based team for the 2014-2015 season that Defendant obtained from Person 1 and provided to Person 2; and (2) Defendant did not inform Person 2 about his employment with a Philippines-based team for the year 2015, where Defendant earned approximately $176,166 of additional income.

      r. As a result of Defendant's conduct, Person 3's attorney relied on the altered contracts and tax returns containing reduced income information to propose a settlement agreement with Defendant in the Stark County Court case.

      s. On or about April 17, 2017, Person 3's attorney faxed to Defendant's attorney an offer to settle the matter for Defendant agreeing to pay $800 per month in child support. Person 3's attorney attached to the settlement offer a child support computation worksheet (the

"worksheet"). Such worksheets were used by parties in Stark County child support court proceedings to outline the income and expenses of the parties, and to calculate the amount of child support payments that the parties would propose to be paid. Person 3's attorney listed Defendant's income on the worksheet as $85,880, relying on Defendant's false 2015 tax return that he provided or caused to be provided to Person's attorney.

      t. On or about April 21, 2017, Defendant emailed a copy of Person 3's proposed settlement, from somewhere in Europe to the State of New Jersey, to Person 1.

      u. On or about April 25, 2017, Defendant authorized, through a telephone call from somewhere in Europe to Akron, Ohio, his signature to be placed on the settlement document, agreeing that Defendant would pay $800 in child support each month to Person 3, and agreeing per the worksheet that his income was $85,880. On this same date, an employee of Defendant's attorney's law firm faxed a signed copy of the settlement agreement to Person 3's lawyer.

      v. On or about April 26, 2017, Person 3's lawyer filed, in the Stark County Court, the signed settlement agreement, with the worksheet attached as Exhibit A, for the assigned Judge's consideration. The Judge signed and approved of the proposed settlement agreement, and the agreed judgment entry was filed on the court docket, with the worksheet attached as Exhibit A, falsely stating that Defendant's income was $85,880.

      w. On or about April 27, 2017, Person 3's lawyer mailed a copy of the Judge's Order to Defendant's attorney's law firm, and provided the order to the SCSEA to oversee the collection of Defendant's future support payments of $800 per month.

x.   In or around February 2018, Defendant attempted to convince the SCSEA to reduce his support payments, relying in part on the false income information on the settlement worksheet that was attached to the Stark County Court order of on or about April 26, 2017.

y.   On or about February 13, 2018, Defendant provided the SCSEA with a letter that he wrote and signed, in which Defendant stated in part, "I recently had my child support order adjusted to $800 per month while making $80,000 per year.  I cannot afford to continue to pay $800 per month..."

Acts in Furtherance of the Conspiracy

27.     In furtherance of the conspiracy, and to affect the objects thereof, Defendant and Person 1 committed the acts described in subsections (c), (d), (f), (g), (h), (i), (j), (o), (p), (t), (u) and (y) of the preceding paragraphs, among others, in the Northern District of Ohio, Eastern Division, and elsewhere.

All in violation of Title 18, United States Code, Section 1349.


MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:

Robert E. Bulford
Chief, Criminal Division